THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* HYMAN MORRIS, Defendant.

Supreme Court, Special Term, Kings County, August 13, 1938.

*William C. Chanler, Corporation Counsel* [*Francis J. Bloustein* of counsel], for the plaintiff.

*Walter R. Hart,* for the defendant.

HOOLEY, J. The defendant was convicted on July 26, 1938, by a city magistrate sitting in the *Municipal Term of the City*

*Magistrates' Court*, Part II, Borough of Brooklyn, of violating section B36–56.0 of the Administrative Code of the City of New York, and was sentenced to thirty days in the workhouse and fined the sum of $500.

The court is of the opinion that the moving papers are defective, as pointed out by the district attorney, because of the fact that they contain no specification of the point relied upon by the moving party in his argument on the motion. Section 529 of the Code of Criminal Procedure requires that " the moving papers *must contain a formal specification of the particular rulings alleged to have been erroneous and of any other grounds upon which the application is based.*" The only question raised by the defendant on the argument is that the magistrate had no jurisdiction to try the case. Although the point was raised at the outset of the trial, the defendant made no point of it in his moving papers, and for this reason alone the motion would have to be denied.

However, in addition, and upon a consideration of the question raised, the magistrate had jurisdiction. Section 81 of the Inferior Criminal Courts Act, which provides in part that no magistrate shall be assigned to a borough wherein he does not reside, except in an emergency, has no application herein. In this case the magistrate was sitting in the *Municipal Term of the City Magistrates' Court* by designation of the chief city magistrate, and under section 140 of the Inferior Criminal Courts Act, a city magistrate, if assigned, may hold a *Municipal Term of the City Magistrates' Court*. There is a distinction between the two courts. Pursuant to section 130 of the Inferior Criminal Courts Act, a Court of Special Sessions may be held by a city magistrate where the offense charged is one of the classes of misdemeanors set forth in that section. A magistrate sitting in *Municipal Term* may, in addition to the charge above mentioned, hear and determine other offenses designated to be heard in that court by the board of city magistrates pursuant to section 100 of the Inferior Criminal Courts Act. On November 15, 1935, the board of city magistrates passed a resolution including in the violations triable by the Municipal Term of the City Magistrates' Court violations under section 31 of article 6 of chapter 15 of the Code of Ordinances which has since been re-enacted as part of the Administrative Code, chapter 36, article 4, sections B36–22.0 to and including B36–77.0. Thus, the section under which defendant was convicted was one triable by the Municipal Term of the City Magistrates' Court and not by the Magistrates' Court.

A history of the three sections, 81, 100 and 140, will help to arrive at a conclusion showing that the designation of the chief

city magistrate was proper. Section 81 (formerly section 51) enacted by Laws of 1910, chapter 659, has remained unchanged since 1910, in so far as it prohibits a magistrate from sitting in any borough in which he does not reside; emergencies excepted. By the same law, section 100 (formerly section 70) provided that magistrates sit within their own borough. The next legislative enactment dealing with this problem was Laws of 1915, chapter 531. Minor changes were made affecting section 81 (then section 51). Section 100 (formerly section 70), except for wording, was changed to provide that all special courts be city wide. This chapter (Laws of 1915, chap. 531) created the Municipal Term of the City Magistrates' Court by enacting section 95-a. In this oᵣ ginal enactment magistrates assigned to sit in the Municipal Term were prohibited from sitting in any borough other than that of their residence. Thus, section 81 (formerly section 51) and section 140 (formerly section 95-a) were originally identical in their residence requirements. No other significant legislative changes were made until enactment of Laws of 1931, chapter 547. By that enactment section 81 remained unchanged but section 140 (formerly section 95-a) was amended so that a magistrate was no longer required to be assigned to sit in the Municipal Term of the City Magistrates' Court in the borough of his residence. Chapter 746 of the Laws of 1933, renumbered section 51 to become the present section 81; section 70 to the present section 100; section 95-a to present section 140.

It is significant to note that section 95-a, the predecessor to section 140, contained a provision authorizing the temporary designation of a magistrate in a borough other than his residence in case of emergency. By Laws of 1931, chapter 547, this limitation was omitted and is still omitted as last amended by Laws of 1933, chapter 746, which renumbered section 95-a to be section 140.

So it is clear that the Legislature did not intend to restrict the chief city magistrate in the designation of magistrates to hold Municipal Term of the City Magistrates' Court with residence requirements.

This court does not feel that there is any reasonable doubt that the conviction will stand, and accordingly the application for a certificate of reasonable doubt must be denied.