Froessel, J.
 

 Appellant was tried in the Municipal Term of the New York City Magistrates’ Court on the basis of an unsworn information charging him with violations of sections 78 and 80 of the Multiple Dwelling Law and sections D26-3.1 and D26-3.2 of the Multiple Dwelling Code (Administrative Code, ch. 26, tit. D) of the City of New York. The court found defendant
 
 1 ‘
 
 guilty as charged”. The question presented on this appeal is whether the fact that the information, which also served as the basis for a warrant of arrest, was not sworn to deprived the court of jurisdiction to try appellant thereon.
 

 Where a defendant has been convicted of a misdemeanor, rather than an offense of less than the grade of misdemeanor, it can no longer be doubted that an unsworn information is jurisdictionally defective
 
 (People
 
 v.
 
 Scott,
 
 3 N Y 2d 148;
 
 People ex rel. Livingston
 
 v.
 
 Wyatt,
 
 186 N. Y. 383). In the
 
 Scott
 
 case, where this precise question was presented (see p. 152), we noted that it would be a £ ‘ dangerous practice ’ ’ to treat an unverified paper as the equivalent of an information, and held (p. 153): ‘£ The requirement that a prosecution for misdemeanor be based upon a sworn information * * * is an essential guarantee to a defendant of a fundamental right, namely, that he be not
 
 *171
 
 punished for a crime without a formal and sufficient accusation, and this right may not be waived by a plea of guilty [citations omitted]. 4 Forms and procedure still have their place and purpose in the administration of the law; without them we would have chaos ’
 
 (People
 
 v.
 
 Zambounis,
 
 251 N. Y. 94, 97).”
 

 In
 
 People
 
 v.
 
 Hamm
 
 (9 N Y 2d 5) we ordered defendant’s judgment of conviction of the
 
 offense
 
 of disorderly conduct vacated, because the information
 
 “
 
 was a complete nullity-—a mere scrap of paper” (p. 10); we noted that in addition to failure to state defendant’s name, the information was unsworn to. In arriving at our decision, we observed (p. 12) that
 
 “
 
 serious consequences may follow conviction for an offense as well as for a misdemeanor ”, and (p. 11) quoted with approval the following language from
 
 People ex rel. Davis
 
 v.
 
 Sheriff
 
 (3 Misc 2d 231, 233): “ While I am mindful of the fact that * * * we are here dealing with a so-called
 
 ‘
 
 offense ’, nevertheless, where such offense is of the type which provides a maximum jail sentence of six months, I believe that all our traditional procedures and safeguards required in a prosecution for a misdemeanor, should be likewise complied with.”
 

 The
 
 Hamm
 
 decision was definitely based on two grounds: lack of verification as well as failure to name the defendant, and we recognized the necessity for observing procedural safeguards in prosecutions for offenses as well as misdemeanors.
 
 Hamm
 
 was but the logical extension of
 
 Scott,
 
 recognizing as it did the serious consequences which might flow from conviction for an offense.
 

 The penalties provided for violation of the Multiple Dwelling Code are illustrative of the severe consequences following a conviction for an offense (Administrative Code, § D26-8.0). In the instant case, the Corporation Counsel recommended that the court impose the maximum sentence, a $1,000 fine
 
 and
 
 a one-year term of imprisonment, since this was not the first conviction; the court declined to follow the recommendation and imposed a fine of $500 or an alternative 30-day sentence. Surely, where a defendant is subject to a year’s imprisonment in a State prison (Penal Law, § 2182) and a substantial fine, it may not be argued that the so-called offense is a minor matter in the disposition of which procedural requirements need not be strictly observed.
 

 
 *172
 
 Moreover, the fact is that one offense of which appellant stands convicted, violation of section 80 of the Multiple Dwelling Law, must, by statutory mandate, be treated procedurally as a misdemeanor. Subdivision 1-a of section 304 of the Multiple Dwelling Law provides, in relevant part: “ For the purpose of conferring
 
 jurisdiction
 
 upon courts and judicial officers generally such violations under this subdivision
 
 shall be deemed misdemeanors and for such purpose only all provisions of law relating to misdemeemors shall apply to such violations,
 
 provided, however, that * * * the city magistrates’ courts in the city of New York, in the first instance, shall have exclusive jurisdiction to hear and determine charges of such violations.” (Emphasis supplied.)
 

 The legislative history of the above-quoted statute makes it clear that the Legislature, in downgrading the violation of certain sections of the Multiple Dwelling Law from misdemeanors to offenses, intended to preserve to the defendant all his prior procedural rights. Before 1953 all violations of the Multiple Dwelling Law constituted misdemeanors. Under the applicable procedure, the accused had to be arraigned before a Magistrate and, if it appeared that there was a basis to the charge, the case was referred to the Court of Special Sessions for ultimate disposition. The delay which this procedure entailed in the disposition of cases led the Legislature to reduce certain violations of the law from the status of misdemeanor to offense, and in New York City to confer upon the City Magistrate— the court of original jurisdiction—the power of summary disposition (see Legislative History, explanatory footnotes to L. 1953, ch. 851, and L. 1954, ch. 733; Laws of New York, 1953, vol. 2, p. 1856; 1954, vol. 2, p. 1697).
 

 The entire scheme involving the downgrading of these violations was solely for the purpose of achieving more expeditious disposition of the cases, with the express retention however of defendants’ procedural safeguards; indeed, the more expeditious the process, the greater may be the need to insure that a defendant’s rights will not be brusquely violated. This then, in our opinion, was the reason why the Legislature carefully required adherence to “all provisions of law relating to misdemeanors ” in all cases charging violation of the new offenses.
 

 
 *173
 
 Since the language of the statute is clear and unambiguous, and inasmuch as we have held that an unsworn information does not confer jurisdiction upon a court to try a misdemeanor
 
 {People
 
 v.
 
 Scott, supra),
 
 it necessarily follows that the court had no jurisdiction to try appellant on the basis of the unverified information. The proceedings were, therefore, jurisdictionally defective and the writ was properly sustained by Special Term.
 

 Accordingly, the order appealed from should be reversed and the order of Special Term sustaining the writ reinstated.
 

 Judges Dye, Van Voorhis and Foster concur with Judge Froessel ; Chief Judge Desmond and Judges Fuld and Burke dissent and vote to affirm.
 

 Order of Appellate Division reversed and that of Special Term reinstated.